ZUCCHERO et al.

v.

ILLINOIS CENT. R. CO.

No. 9175(2).

United States District Court,
E. D. Missouri, E. D.

May 10, 1954.

Jones, Hocker, Gladney & Grand, H. C. Gaebe, Jr., St. Louis, Mo., for plaintiffs.

William R. Gentry, Herbert E. Bryant, St. Louis, Mo., for defendant.

HULEN, District Judge.

Plaintiffs sue for damages to twelve carloads of bananas while in transit. Each carload is the subject of a separate count.

It is stipulated two questions are for ruling: (1) The extent of damage to each shipment, defendant admitting a part of plaintiffs' claim on each car; and (2) the measure of recovery for loss sustained.

**(1)**

Plaintiffs' evidence of loss comes after the bananas have been removed from the railroad car, transported by truck to plaintiffs' place of business in St. Louis, placed in storage rooms and there held from three to five days, and then moved to cutting table. While in the cutting process the bananas were inspected and each banana found damaged was segregated and weighed and a claim made against the defendant based upon sale price of the bananas in St. Louis determined by the "St. Louis Market Report-

er" at time of such ascertainment of the loss.

Bananas come in stalks or bunches. The groups of bananas on a bunch are called "hands" and the individual bananas are called "fingers." The defendant, through its agency Western Weighing and Inspection Bureau, inspected each of the cars. Defendant's inspection of the bananas on the bunch was made at the car door at time of unloading. The parties agreed as to number of bunches or stalks in each car that were damaged. The difference is in the number of bananas damaged, or pounds on each bunch. Defendant's theory of recovery is cost at New Orleans, origin of shipment, where plaintiffs purchased, plus freight to St. Louis, Missouri.

Defendant's admission of damages is based on an estimate. The largest bananas are on the bottom of the bunch. Defendant took a banana from a bottom hand on each damaged bunch and used that as the estimated weight of each banana which defendant found damaged, regardless of where the banana was located on the bunch.

It is admitted some damage resulted from a shifting of the load. Bananas are packed with the bottom of the bunch down and stand upright in the car. The ends of the stalks fit into grooves on the floor of the car. A shifting of the load causes the bottom of the bunch to scrape on the grooves constructed in the bottom of the car. Damage can also result from bunches of bananas being forced against one another when a shift takes place and by brushing the sides of the car. The greater damage is done to the bottom of the bunch.

Plaintiff Joseph Zucchero supervised the cutting of the bunches for plaintiffs. He testified he saw every banana classed as damaged, saw the damaged bananas selected from each hand, witnessed the weighing of the damaged bananas as to each hand, and made a record of the weight. The original records were introduced in evidence. The credibility of this witness is doubtful. He was contradicted as to what took place when representatives of the Western Weighing and Inspection Bureau made their inspection at the car door. His testimony that the inspectors did not physically handle the bananas but simply looked at them, and that the trucks of plaintiffs in which the bananas were loaded were padded, was contradicted by the inspectors. An inspector testified they physically handled each bunch of bananas and inspected them carefully. The inspectors testified that in each case they selected a banana from the bottom of the hand to get the average weight and in most cases the inspector carried scales with them. Two inspectors testified that there were no pads in plaintiffs' trucks. The plaintiffs recognize the necessity or desirability of using pads in transferring the bananas from the railroad car to their storage house in St. Louis. Plaintiffs argue that they have no motive for increasing the amount of their damage. The basis of this argument is there was a shortage of bananas and they were able to sell all the bananas that were available to them on the wholesale market. There is no evidence of the amount of banana sales made by plaintiffs. There is no evidence from which to determine if sales and loss equal the purchase of bananas.

Nor do we consider defendant's inspection as entirely accurate. Its evidence of damage is an estimate. It was made from looking at each bunch of bananas. There is room for error through oversight but the oversight should not amount to the large difference between plaintiffs' testimony as to damage and defendant's estimate of damage. The Court must decide the case on the record made, unsatisfying though it may be.

We find that bananas are a delicate fruit and easily bruised. A bruise on a green banana leads to a damaged ripe banana. The bananas arrive in St. Louis green. Plaintiffs receive them from the car green. Defendant's liability ends at the car door. Thereafter each bunch of bananas was handled by agents of the defendant. They were handled once when the bunches were

loaded from the railway car onto plaintiffs' truck. After carriage over city streets by truck to plaintiffs' place of business, each bunch of bananas was handled a second time from the truck at plaintiffs' unloading dock. The bananas were taken to the cold storage room and handled a third time when they were hung. After three to five days each bunch was taken down and handled a fourth time and taken to the cutting table. That these movements could have taken place with no injury to any fruit is not plausible. The proper place to have determined damage was at the railway car door while defendant's representatives were present. Plaintiffs were there advised the number of bunches found damaged by Western Weighing and Inspection Bureau inspectors. Plaintiffs' agents were told the pounds found to be damaged, or would have been given this information upon inquiry. There is no evidence that any dispute arose between plaintiffs and defendant's inspectors at the cars.

Defendant offered evidence by the inspectors that inspection was made and damage ascertained on cars referred to in Counts 2, 4, 5, 6, 11 and 12. We conclude this testimony corresponds with defendant's admission of liability on these counts and is the best evidence as to the loss and accordingly so find the loss on the counts last listed above.

The only testimony and the best testimony as to loss on the remaining counts is that given by Joseph Zucchero. We therefore conclude that plaintiffs' loss was as follows:

Count 1—6,390 pounds
Count 3—5,012 pounds
Count 7—8,498 pounds
Count 8—7,109 pounds
Count 9—6,550 pounds
Count 10—7,985 pounds

(2)

What is the measure of plaintiffs' recovery?

Plaintiffs say the proper measure of damages is the reasonable wholesale market price of cut bananas at destination in St. Louis, plus the added expense of separating the damaged bananas from the cut bananas. Defendant claims recovery should be the purchase price of the bananas plus freight from New Orleans to St. Louis.

■■ Plaintiffs' testimony was that during the year of the shipments bananas were scarce and were rationed on the orders of the wholesalers such as plaintiffs. The rationing cut down plaintiffs orders so that they were unable to supply their retail customers in St. Louis. Plaintiffs' evidence while meager is all the testimony there is on the subject, and defendant made no effort to contradict it or show a different situation.

Under the circumstances plaintiffs' loss was what the damaged bananas could have been sold for in St. Louis as shown by the St. Louis Market Reporter on the day of sale of undamaged bananas from the particular shipment. Because damaged bananas appeared in substantial portions in each car forming the claim, it would have been necessary to segregate the damaged bananas before any sales of bananas could have been made from such bunches. It was the custom of the trade in St. Louis for wholesalers such as plaintiffs to cut their bananas into hands for sale to the retailers. Plaintiffs' testimony is that there was a 10% additional expense in cutting the hands due to the necessity of segregating the damaged bananas. Plaintiffs are entitled to recover this 10%.

Normal damage on a car of bananas was forty pounds. Such a credit should be allowed to the defendant.

The Court adopts the foregoing as its findings of fact and conclusions of law. A judgment may be settled in accordance and submitted.